UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BATH & BODY WORKS BRAND MANAGEMENT, INC., Seven Limited Parkway Reynoldsburg, Ohio 43068 | : : : : : | |
| and | : : | |
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., Four Limited Parkway Reynoldsburg, Ohio 43068 | : : : : | Civil Action No.: 13-135 |
| | : | Judge: |
| Plaintiffs, | : : : | |
| v. | : : | Jury Trial Demanded |
| | : | |
| ADVANCED BEAUTY, INC., 5720 Lyndon B. Johnson Freeway Suite 400 Dallas, Texas 75240 | : : : : : | |
| Defendant. | : : | |

## COMPLAINT FOR TRADEMARK AND TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND VIOLATION OF STATE STATUTE

BATH & BODY WORKS BRAND MANAGEMENT, INC. ("Bath & Body Works" or "BBW") and VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC. ("Victoria's Secret" or "VS"; collectively with BBW, "Plaintiffs") by and through their attorneys, bring this action for trademark and trade dress infringement and allege against ADVANCED BEAUTY, INC. ("Advanced Beauty" or "Defendant") as follows:

## NATURE OF THE ACTION

1.     Plaintiffs -- sister companies owned by their parent, Limited Brands, Inc. -- are acknowledged innovators and category leaders in the highly competitive personal body care and beauty products industry.  By this action for trademark and trade dress infringement, Plaintiffs seek an injunction, damages, and related relief against Defendant's sale of personal care products which are thinly-disguised knockoffs of Plaintiffs' highly successful products.  Defendant has intentionally and progressively encroached on Plaintiffs' rights in a concerted, ongoing attempt to hijack the substantial brand awareness and good will associated with Plaintiffs' products, and to cause confusion among the buying public, all to Plaintiffs' great and irreparable harm.

## THE PARTIES

2.     Plaintiff Bath & Body Works is a Delaware corporation with offices at Seven Limited Parkway, Reynoldsburg, Ohio 43068, and is qualified to do business and is doing business in the State of Ohio and in this judicial district.

3.     Plaintiff Victoria's Secret is a Delaware corporation with offices at Four Limited Parkway, Reynoldsburg, Ohio 43068, and is qualified to do business and is doing business in the State of Ohio and in this judicial district.

4.     On information and belief, Defendant is a Texas corporation with offices at 5720 Lyndon B. Johnson Freeway, Suite 400, Dallas, Texas 75240, and is transacting business in the State of Ohio and in this judicial district.

## JURISDICTION AND VENUE

5.     Count I herein arises under the laws of the United States prohibiting infringement of federally registered trademarks, specifically the Lanham Act, 15 U.S.C. § 1114.  Count II is for unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Count III is for deceptive trade practices in violation of Ohio Rev. Code § 4165.01 *et seq.*  Count IV arises under Ohio common law prohibiting trademark infringement and unfair competition.

6.     This Court has original jurisdiction over the subject matter of this action based on 15 U.S.C. § 1121, 28 U.S.C. § 1331, § 1332, § 1338(a), as federal questions are presented, the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court has jurisdiction over the state law claims asserted in Counts III and IV herein under 28 U.S.C. § 1367 and § 1338(b).

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), as the Defendant conducts business within this district, and the acts giving rise to the asserted claims are being committed within this district.

## FACTS

### Plaintiff Bath & Body Works and Its Business

8.     Since 1990, Plaintiff BBW has reinvented the personal care industry by introducing a wide range of fragrant, flavorful, indulgent personal care and beauty products, including soaps, lotions, creams, shower gels, fragrance, face care products, gift sets, home fragrances, and candles.  BBW is committed to helping consumers improve their emotional and physical well-being, by combining traditional spa treatments with botanical and natural ingredients, then developing an extensive collection of advanced, easy-to-use personal care products with proven effectiveness.

9.     BBW owns the BATH & BODY WORKS trademark and trade name, and many additional trademarks used in connection with its products.  Directly or through affiliates, BBW owns and operates over 1,500 BATH & BODY WORKS specialty retail stores nationwide, and the BBW website, www.bathandbodyworks.com.

10. To date, BBW has elected to sell its products only through its owned channels of trade, and not through third party retailers, such as mass merchants.

11. BBW markets its products through various means, including print and online promotions, and social media. BBW's Facebook page has over 5.5 million "likes," and BBW is followed by nearly 95,000 users on Twitter and 18,000 users on Pinterest. Videos posted to BBW's YouTube channel have garnered over 260,000 views.

12. BBW products are renowned for their use of distinctive, attractive trade dress which, along with their corresponding trademarks, identify BBW as their source, and assure consumers they are purchasing products of the highest quality.

13. One of BBW's core product lines is the Signature Collection, which consists of more than two dozen individual "fragrances," each presented in various forms of personal care products—body cream and lotion, body wash, fragrance mist, and others.

14. As detailed below, some of the notable fragrances in the Signature Collection are JAPANESE CHERRY BLOSSOM, SWEET PEA, WARM VANILLA SUGAR, TWILIGHT WOODS, BLACK RASPBERRY VANILLA, and CUCUMBER MELON.

15. BBW introduced the JAPANESE CHERRY BLOSSOM fragrance in 2006, and it has become the # 1 selling fragrance in the Signature Collection. The JAPANESE CHERRY BLOSSOM product packaging was revised in or about 2008; the body cream product now uses the inherently distinctive trade dress shown below, consisting of a deep red "foil" substrate background, the depiction of white flowers, dark green leaves, and the product trademark, rendered in stacked format on two lines in white, lower case font, with the second word "**blossom**" in larger print. (Image on next page)



JAPANESE CHERRY BLOSSOM body cream

16.     Consumers have come to recognize and rely on the JAPANESE CHERRY BLOSSOM trademark and trade dress as indicating BBW as the exclusive source of the fragrance.  As a result of this recognition and reliance, and BBW's commitment to the highest level of product quality, the fragrance has been highly successful, with sales of JAPANESE CHERRY BLOSSOM personal care and beauty products since 2008 alone exceeding $650 million.

17.     On January 22, 2013, a review posted to BBW's website from a customer in Kansas stated:  "I wear this body cream every day, and get so many compliments on it!!"  On September 16, 2012, a customer from Utah said: "Of all the products, and all the scents, this is by far my favorite."  On September 16, 2012, another customer said:  "I like the bottle design because I do agree that it seems like a Japanese floral design."  And on December 19, 2011, a customer from California asked the rhetorical question: "Will I ever tire of Japanese Cherry

5

Blossom?  It seems not!  This scent has come to represent the holidays for me just as much as Christmas trees and gingerbread."

18.     Since 2006, the JAPANESE CHERRY BLOSSOM fragrance has received numerous readers' choice and other awards from general consumer magazines, including *Allure* and *Glamour*.

19.     BBW introduced the SWEET PEA fragrance in 2000, and it has matured into one of the top five selling fragrance in the Signature Collection.  SWEET PEA product packaging was revised in or about 2010; the body cream product now uses the inherently distinctive trade dress shown below, consisting of predominantly pink flowers positioned on a light, soft green background, and the product trademark, rendered in stacked format on two lines in lower case font, with the second word "**pea**" in larger print.



SWEET PEA body cream

20.     Consumers have come to recognize and rely on the SWEET PEA trademark and trade dress as indicating BBW as the exclusive source of the fragrance.  As a result of this

6

recognition and reliance, and BBW's commitment to the highest level of product quality, the
fragrance has been highly successful, with sales of SWEET PEA personal care and beauty
products since 2008 alone of approximately $500 million.

21.     On December 13, 2013, a review posted to BBW's website from a customer in
Florida stated:  "Sweet Pea is a favorite for me, love to put on the body cream and layer it with
the body spray, so pretty!"  On April 25 , 2012, a customer pleaded: "Please never discontinue
this scent ever!"  On March 17, 2012, a customer said of the fragrance: "Perfection.  It makes me
happy."

22.     Since 2006, the SWEET PEA fragrance has received numerous readers' choice
and other awards from general consumer magazines, including *CosmoGirl!*, *Seventeen*,
*TeenVogue*, and *Essence*.

23.     BBW owns incontestable U.S. Trademark Registration No. 2574220 for the mark
SWEET PEA, in connection with various personal care products.

24.     BBW introduced the TWILIGHT WOODS fragrance in 2009, and it has matured
into one of the top five selling fragrances in the Signature Collection.  Until a recent re-stage
(which maintains a very similar commercial impression), TWILIGHT WOODS body cream
product packaging used the inherently distinctive trade dress shown below, consisting of a brown
and burgundy "foil" substrate background, shadowy dark imagery depicting trees/plants, and the
product trademark, rendered in stacked format on two lines in lower case font, with the second
word "**woods**" in larger print.   (Image on next page)



TWILIGHT WOODS body cream

25.    Consumers have come to recognize and rely on the TWILIGHT WOODS

trademark and trade dress as indicating BBW as the exclusive source of the fragrance.    As a

result of this recognition and reliance, and BBW's commitment to the highest level of product

quality, the fragrance has been highly successful, with sales of TWILIGHT WOODS personal

care and beauty products since its introduction exceeding $300 million.

26.    On November 4, 2012, a review posted to BBW's website from a customer in

California stated:  "Absolutely LOVE this scent!  My only complaint is the same as another

reviewer [from Tennessee, posted October 31, 2012] in that the 'design on the bottles/tubes now

seems to 'teenage girly' and doesn't match the scent.  The design prior to this one [shown above]

was RIGHT ON THE MONEY in my opinion as well, matching that alluring and almost dark

quality to the scent.'"

27.     The TWILIGHT WOODS fragrance has received a 2010 Best New Fragrance

Award from *Real Beauty*, and the 2011 "FiFi" Award from The Fragrance Foundation for

Fragrance of the Year (Men).

28.     BBW introduced the WARM VANILLA SUGAR fragrance in 2000, and it has

matured into one of the top five selling fragrances in the Signature Collection.  For many years,

packaging for WARM VANILLA SUGAR products has included imagery featuring stacks of

sugar cubes, sometimes in combination with vanilla beans; an earlier version of body cream

packaging, and the current version of BBW's WARM VANILLA SUGAR shampoo and

conditioner products, all featuring stacked sugar cube imagery, are shown below.



WARM VANILLA SUGAR body cream, shampoo and conditioner

29.     Consumers have come to recognize and rely on the WARM VANILLA SUGAR

trademark and trade dress as indicating BBW as the exclusive source of the fragrance.    As a

result of this recognition and reliance, and BBW's commitment to the highest level of product

quality, the fragrance has been highly successful, with sales of WARM VANILLA SUGAR

personal care and beauty products since 2008 alone exceeding $350 million.

30.     On January 27, 2013, a review posted to BBW's website from a customer in North Carolina stated:  "Of all the Warm Vanilla Sugar Body Care products, the Body Cream seems to be the most scented…As far as scent, no it does not smell like the original WVS that they packaged up to 2008 (the one that smelled like vanilla, coconut, and cocoa powder…had the sugar cubes on the packaging)."  On January 10, 2013, a customer from Maryland raved: "I loved this scent 5 years ago and I love it now.  It's a classic…"  On October 25, 2012, a customer from California raved: "This smells delicious, it smells exactly the same way it did when I wore it in 2002.  Perfect fall scent."

31.     Since 2006, the WARM VANILLA SUGAR fragrance has received numerous readers' choice and other awards from general consumer magazines, including *Child Magazine*, *CosmoGirl!*, *Glamour*, *Seventeen*, *TeenVogue*, *Women's Health* and *Total Beauty*.

32.     BBW owns U.S. Supplemental Trademark Registration No. 2528721 for the mark WARM VANILLA SUGAR, in connection with various personal care products, and candles.  WARM VANILLA SUGAR has acquired distinctiveness and secondary meaning as a source indicator for BBW.

33.     BBW introduced the BLACK RASPBERRY VANILLA fragrance to the Signature Collection in 2004.  Since in or about 2008, BLACK RASPBERRY VANILLA product packaging has used the inherently distinctive trade dress shown below, consisting of a dark burgundy "foil" substrate background, berry images on the lower portion, below a white blooming flower, and the product trademark, rendered in stacked format on two lines in lower case font, with the word "**vanilla**" in larger print.   (Image on next page)



BLACK RASPBERRY VANILLA body cream

34.     Consumers have come to recognize and rely on the BLACK RASPBERRY

VANILLA trademark and trade dress as indicating BBW as the exclusive source of the

fragrance.    As a result of this recognition and reliance, and BBW's commitment to the highest

level of product quality, the fragrance has been highly successful, with sales of BLACK

RASPBERRY VANILLA personal care and beauty products since 2008 alone of approximately

$100 million.

35.     On January 15, 2013, a review posted to BBW's website from a customer in Ohio

stated: "This scent is one of my all-time favorite scents at Bath & Body Works.  It's very

distinguished and honest."

36.     BBW introduced the CUCUMBER MELON fragrance in or about 1998, and it

has been a mainstay of the Signature Collection.  For many years, packaging for products in the

CUCUMBER MELON line has included imagery featuring a cut melon slice, and round cut

slices of cucumber; an earlier version of body cream packaging, and the current version of

BBW's CUCUMBER MELON foaming hand soap, all featuring a cut melon slice and round cut slices of cucumber imagery, are shown below.



CUCUMBER MELON body cream and foaming hand soap

37.      Consumers have come to recognize and rely on the CUCUMBER MELON trademark and trade dress as indicating BBW as the exclusive source of the fragrance.    As a result of this recognition and reliance, and BBW's commitment to the highest level of product quality, the fragrance has been highly successful, with sales of CUCUMBER MELON personal care and beauty products since 2008 alone exceeding $100 million.

38.      On November 4, 2012, a review posted to BBW's website from a customer in Montana stated:  "As long as I can remember this Cucumber Melon has been around in BBW stores.  It is a classic."  One June 12, 2012, a customer from Georgia announced: "Very Pleased to say I am a Happy and Giddy long time loyal customer, the credit goes to this refreshing fragrance!"  On May 3, 2012, a customer from Pennsylvania said: "I continue to love this scent its been over 15 years since… I first tried this product…"  On November 24, 2011, a customer from Idaho added: "After years of wearing this fragrance my kids say it smells like 'Mom.'  I use

nearly every product you have in this scent…"  And on March 27, 2011, a customer in Illinois announced:  "[T]he smell is perfect for all year, and the packaging is my favorite."

39.     In 2011 BBW introduced a fragrance mist to the Signature Collection using the trademark BALI MANGO.  In 2012 additional products and fragrances were added, including ARUBA COCONUT and RIO RUMBERRY, creating an "Escape" or "Tropical" line within the Signature Collection.  In 2012 the fragrance mists for these three products were marketed in the inherently distinctive trade dress shown below, featuring clear bottles (revealing red, blue and purple liquids), gold bands located below the spray nozzles, combinations of overlapping "animal print" and "plant leaf" imagery in the lower portion of the front labels, and the product trademarks, rendered in metallic gold lettering, in a stacked format on two lines, using all upper case font, as shown below.



2012 BALI MANGO, ARUBA COCONUT, and RIO RUMBERRY fragrance mists

40.     Consumers have come to recognize and rely on the BALI MANGO, ARUBA COCONUT and RIO RUMBERRY trademarks and trade dress as indicating BBW as the exclusive source of the fragrances.    As a result of this recognition and reliance, and BBW's

13

commitment to the highest level of product quality, the fragrances have been highly successful, with combined sales of BALI MANGO, ARUBA COCONUT, and RIO RUMBERRY personal care and beauty products since their introduction of approximately $50 million.

41.     On January 27, 2013, a customer from Oklahoma said of BALI MANGO: "I honestly think this might be my favorite BBW scent ever."  On January 9, 2013, a customer from Indiana said of ARUBA COCONUT: "This is my favorite scent from BBW."  And on May 9, 2012, a customer said of the RIO RUMBERRY fragrance and packaging: "This is definitely one of my favorite scents.  I love the packaging with the CHEETAH DOTS!!!!!"

42.     BBW owns U.S. Trademark Registration Nos. 4234495 and 4226927 for the marks BALI MANGO and ARUBA COCONUT, respectively, in connection with personal care products.

**Plaintiff Victoria's Secret and Its Business**

43.     Plaintiff Victoria's Secret owns the world-famous VICTORIA'S SECRET trademark and trade name, and many additional trademarks used in connection with intimate apparel, beauty products, and a wide variety of other products and services.  Victoria's Secret owns and operates over 1,000 VICTORIA'S SECRET retail stores throughout the United States, including within this judicial district. Victoria's Secret also distributes the world-famous VICTORIA'S SECRET Catalogue, operates the highly successful website, www.victoriassecret.com, and produces the acclaimed VICTORIA'S SECRET FASHION SHOW, a televised event featuring the "Victoria's Secret Angel" supermodels, that has become an annual highlight of the fashion industry.  The VICTORIA'S SECRET brand identifies Victoria's Secret as the exclusive source of these products and services, and assures consumers of a high level of quality and satisfaction.

14

44.    After establishing its reputation as the world's leading specialty retailer of intimate apparel, Victoria's Secret expanded its business to become a major seller of beauty and personal care products, including fragrances, lotions, creams, and fragrance mists, among many others.  Victoria's Secret has methodically and strategically developed its beauty and personal care product lines into a billion dollar business.

45.     Like its sister company and co-Plaintiff BBW, to date Victoria's Secret has elected to sell its products only through its owned channels of trade, and not through third party retailers, such as mass merchants.

46.    In addition to their effectiveness, Victoria's Secret products are renowned for their distinctive, attractive trade dress and trademarks, which identify Victoria's Secret as their source, and assure consumers they are purchasing products of the highest quality.

47.    Victoria's Secret introduced the LOVE SPELL fragrance to its body care line in or about 1999, and it has matured into a top selling fragrance, with multiple products including body cream, lotion and fragrance mist.  Currently, the LOVE SPELL fragrance mist uses the inherently distinctive trade dress shown below, featuring a clear "wide shoulder" bottle (revealing purple liquid), a gold band located below the spray nozzle, design elements on the interior back label that show through the fragrance mist product, and a "crest" design that includes the product name, above the "call out notes" of "cherry blossom & peach."



LOVE SPELL fragrance mist

48.     Consumers have come to recognize and rely on the LOVE SPELL trademark and trade dress as indicating Victoria's Secret as the exclusive source of the fragrance.   As a result of this recognition and reliance, and Victoria's Secret's commitment to the highest level of product quality, the fragrance has been highly successful, with sales of LOVE SPELL beauty products exceeding $150 million.

49.     Victoria's Secret owns incontestable U.S. Trademark Registration No. 3004519 for the mark LOVE SPELL.

50.     Victoria's Secret introduced the PURE SEDUCTION fragrance to its body care line in or about 2005, and it has matured into a top selling fragrance, with multiple products including body cream, lotion and fragrance mist.  Currently, the PURE SEDUCTION fragrance mist uses the inherently distinctive trade dress shown below, featuring a clear "wide shoulder" bottle (revealing pinkish liquid), a gold band located below the spray nozzle, design elements on the interior back label that show through the fragrance mist product, and a "crest" design that includes the product name, above the "call out notes" of "red plum & freesia."



PURE SEDUCTION fragrance mist

51.     Consumers have come to recognize and rely on the PURE SEDUCTION trademark and trade dress as indicating Victoria's Secret as the exclusive source of the fragrance. As a result of this recognition and reliance, and Victoria's Secret's commitment to the highest level of product quality, the fragrance has been highly successful, with sales of PURE SEDUCTION beauty products exceeding $100 million.

52.     Victoria's Secret owns incontestable U.S. Trademark Registration No. 3148825 for the mark PURE SEDUCTION.

53.     Victoria's Secret introduced the DREAM ANGELS HEAVENLY fragrance to its body care line in or about 1999, and it has become Victoria's Secret's best-selling fragrance, with multiple products including eau de parfum, lotion and fragrance mist.

54.     Consumers have come to recognize and rely on the DREAM ANGELS HEAVENLY trademark as indicating Victoria's Secret as the exclusive source of the fragrance. As a result of this recognition and reliance, and Victoria's Secret's commitment to the highest level of product quality, the fragrance has been highly successful, with sales of DREAM ANGELS HEAVENLY beauty products exceeding $100 million.

55.     The DREAM ANGELS HEAVENLY fragrance received the 2000 "FiFi" Award from The Fragrance Foundation for Women's Fragrance Star of the Year, Private Label Stores, and was the # 1 fragrance in America by sales, for the years 2005-2010.

56.     Victoria's Secret owns U.S. Registration Nos. 3588849 and 3775192 for the mark DREAM ANGELS HEAVENLY in connection with personal care and related products.

57.     Victoria's Secret introduced the LOVE IS HEAVENLY fragrance to its body care line in 2012, to augment its highly successful "Heavenly" family of products.  The LOVE IS HEAVENLY fragrance now includes multiple products, such as eau de parfum, lotion, body cream and fragrance mist.  Consumers have come to recognize and rely on the LOVE IS HEAVENLY trademark as indicating Victoria's Secret as the exclusive source of the fragrance. Victoria's Secret owns U.S. Trademark Registration No. 4187927 for the mark LOVE IS HEAVENLY.  Since its introduction in 2012, sales of LOVE IS HEAVENLY products have exceeded $10 million.

58.     Plaintiffs' products are promoted and sold nationwide to a broad, predominantly female consumer base that includes anyone who wishes to enhance their physical and emotional well-being by using high quality, attractively branded and packaged personal care products.

### Advanced Beauty, Inc. and Its Infringing Acts

59.     On information and belief, Advanced Beauty Systems, Inc. was organized in Texas in 2003, and entered the body care business in earnest in 2005.  Defendant Advanced Beauty, Inc. was incorporated in Texas in 2011, and is the successor to Advanced Beauty Systems, Inc.

60.     On information and belief, Defendant is a wholesaler/manufacturer of personal care products, which it sells through third party retailers.

61.     On information and belief, Defendant promotes and sells its products nationwide to a broad, predominantly female consumer base that includes anyone who uses or would consider using personal care products.

62.     Defendant is a direct competitor of both Plaintiffs in the personal care business.

63.     On information and belief, from its inception Defendant's business model has included copying the trade dress of successful competitors' products, to gain a foothold in the market by trading on the reputations and good will established by others.  In 2005, Defendant was sued in the Southern District of New York for intentionally infringing the trade dress used in connection with L'OCCITANE brand personal care products.  A Final Judgment and Injunction on Consent was entered in the litigation, requiring Defendant to pay the plaintiff $40,000, and cease using the accused trade dress.

64.     On information and belief, Defendant's business has experienced significant growth in recent years.

65.     On information and belief, in recent years Defendant has attempted to convert personal care customers from specialty stores (including Plaintiffs' stores) to drug stores, food stores, and other mass retail outlets where Defendant's products are sold.

66.      On information and belief, in recent years Defendant has adopted a strategy of trying to bring BBW and VS "style" products to mass retail outlets.  In furtherance of this strategy, Defendant has deliberately and intentionally copied Plaintiffs' trademarks and trade dress as identified above.

67.      Defendant has introduced a fragrance, EXOTIC CHERRY BLOSSOM, positioned to compete directly against BBW's successful fragrance, JAPANESE CHERRY BLOSSOM.  Defendant's body cream product for this fragrance now uses the trade dress shown

below, consisting of a deep red "foil" substrate background, the depiction of white flowers, dark green leaves, and the product trademark, rendered in stacked format on two lines in white, lower case font, with the second word "**blossom**" in larger print.



EXOTIC CHERRY BLOSSOM body cream

68.    Defendant has introduced a fragrance, SWEET PETALS, positioned to compete directly against BBW's successful fragrance, SWEET PEA.  Defendant's body cream product for this fragrance now uses the trade dress shown below, consisting of predominantly pink flowers positioned on a light, soft green background, and the product trademark, rendered in stacked format on two lines in lower case font, with the second word "**petals**" in larger print.



SWEET PETALS body cream

69.    Defendant has introduced a fragrance, ENCHANTED FOREST, positioned to compete directly against BBW's successful fragrance, TWILIGHT WOODS.  Defendant's body cream product for this fragrance now uses the trade dress shown below, consisting of a brown and burgundy "foil" substrate background, shadowy dark imagery depicting trees/plants, and the product trademark, rendered in stacked format on two lines in lower case font, with the second word "**forest**" in larger print.



ENCHANTED FOREST body cream

70.     Defendant has introduced a fragrance, TOASTED VANILLA SUGAR, positioned to compete directly against BBW's successful fragrance, WARM VANILLA SUGAR.  Defendant's body cream product for this fragrance now uses the trade dress shown below, consisting of imagery featuring stacks of sugar cubes in combination with vanilla beans, and the product trademark.



TOASTED VANILLA SUGAR body cream

71.     Defendant has introduced a fragrance, BLACKBERRY VANILLA, positioned to compete directly against BBW's successful fragrance, BLACK RASPBERRY VANILLA. Defendant's body cream product for this fragrance now uses the trade dress shown below, consisting of a dark burgundy "foil" substrate background, berry images on the lower portion, below a white blooming flower, and the product trademark, rendered in stacked format on two lines in lower case font, with the word "**vanilla**" in larger print.



BLACKBERRY VANILLA body cream

72.     Defendant has introduced a fragrance, FRESH CUCUMBER MELON, positioned to compete directly against BBW's successful fragrance, CUCUMBER MELON.  Defendant's body cream product for this fragrance now uses the trade dress shown below, consisting of imagery featuring a cut melon slice, and round cut slices of cucumber, and the product trademark.



FRESH CUCUMBER MELON body cream

73.     In 2012 Defendant introduced a "Tropical Mist Collection," consisting of three fragrance mist products  --  MIAMI MANGO, CABO COCONUT and PARADISE PASSIONFRUIT -- positioned to compete directly against BBW's successful Tropical mist collection, comprised of BALI MANGO, ARUBA COCONUT and RIO RUMBERRY. Defendant's Tropical Mist Collection now uses the trade dress shown below, featuring clear bottles (revealing red, blue and purple liquids), gold bands located below the spray nozzles, combinations of overlapping "animal print" and "plant leaf" imagery in the lower portion of the front labels, and the product trademarks, rendered in metallic gold lettering, in a stacked format on two lines, using all upper case font.



MIAMI MANGO, CABO COCONUT, and PARADISE PASSIONFRUIT fragrance mists

74.     Defendant has introduced a fragrance, UNDER MY SPELL, positioned to compete directly against VS's successful fragrance, LOVE SPELL.  Defendant's fragrance mist for this fragrance now uses the trade dress shown below, featuring a clear "wide shoulder" bottle, a gold band located below the spray nozzle, design elements on the interior back label that impart a purple color to the liquid, and a "crest" design that includes the product name, above the "call out notes" of "Cherry Blossom & Peach."

24



UNDER MY SPELL fragrance mist

75.     Defendant has introduced a fragrance, SWEET SEDUCTION, positioned to compete directly against VS's successful fragrance, PURE SEDUCTION.  Defendant's fragrance mist for this fragrance now uses the trade dress shown below, featuring a clear "wide shoulder" bottle, a gold band located below the spray nozzle, design elements on the interior back label that impart a red color to the liquid, and a "crest" design that includes the product name, above the "call out notes" of "Red Plum & Freesia."



SWEET SEDUCTION fragrance mist

76.     Defendant has introduced a fragrance, HEAVENLY LOVE, positioned to compete directly against VS's successful fragrances, DREAM ANGELS HEAVENLY and LOVE IS HEAVENLY.

77.     Defendant's products identified in paragraphs 67-76 above are the "Infringing Products."

78.     Through its actions set forth above, Defendant has progressively encroached on Plaintiffs' trademarks and trade dress in such a way that, at present, consumers are likely to be confused as to the source or affiliation of the Infringing Products.

79.     Defendant's use of packaging violators indicating that its products are "NEW," along with the house marks such as "Bodycology" or "Naughty & Nice," suggests to the relevant trade and public that authorized, private label versions of Plaintiffs' well-known fragrances are now available in mass channels of trade.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(a)

80.     Plaintiffs repeat and reallege as if fully set forth herein the allegations of paragraphs 1 through 79 inclusive.

81.     Defendants' acts infringe the Plaintiffs' registered trademarks identified herein, as they are likely to lead the relevant trade and public to associate Defendant's products with Plaintiffs' businesses, products and services, and are likely to cause confusion, mistake, or deception within the meaning of 15 U.S.C. § 1114(a).

82.     Defendant's acts complained of herein are willful and done with the intention of causing confusion, mistake, or deception.

83.     Defendants' acts complained of herein jeopardize the goodwill symbolized by Plaintiffs' registered trademarks, causing serious and irreparable injury to Plaintiffs for which they have no adequate remedy at law.

## COUNT II

## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

84.     Plaintiffs repeat and reallege as if fully set forth herein the allegations of paragraphs 1 through 79 inclusive.

85.     Plaintiffs' products incorporate highly distinctive, non-functional features that form protectable and proprietary trade dress.

86.     Plaintiffs' trade dress identified herein has achieved widespread recognition and has acquired distinctiveness.

87.     Plaintiffs' unregistered trademarks identified herein are inherently distinctive, or have acquired distinctiveness and secondary meaning.

88.     Defendant's acts complained of herein infringe Plaintiffs' trade dress and unregistered trademarks, as they are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant's products with Plaintiffs, or as to the origin, sponsorship or approval of Defendant's products, services or commercial activities in violation of Plaintiffs' rights, within the meaning of 15 U.S.C. § 1125(a).

89.     Defendant's acts complained of herein are willful and done with the intention of causing confusion, mistake, or deception, or otherwise trading unfairly upon the valuable goodwill built up in Plaintiffs' trade dress and unregistered trademarks.

27

90.     Defendant's acts complained of herein jeopardize the goodwill symbolized by the Plaintiffs' trade dress and unregistered trademarks, causing serious and irreparable injury to Plaintiffs for which they have no adequate remedy at law.

## COUNT III

### DECEPTIVE TRADE PRACTICES IN VIOLATION OF OHIO REV. CODE § 4165.01 ET SEQ.

91.     Plaintiffs repeat and reallege as if fully set forth herein the allegations of paragraphs 1 through 79 inclusive.

92.     Defendant's acts complained of herein constitute unfair competition in violation of Ohio Rev. Code § 4165.01 et seq.

93.     Defendant's acts complained of herein were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiffs' rights.

94.     Defendant's acts complained of herein have caused, and if not restrained by this Court, will continue to cause Plaintiffs serious and irreparable injury for which Plaintiffs have no adequate remedy at law.

## COUNT IV

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF OHIO COMMON LAW

95.     Plaintiffs repeat and reallege as if fully set forth herein the allegations of paragraphs 1 through 79 inclusive.

96.     Defendant's acts complained of herein constitute trademark infringement and unfair competition in violation of the common law of Ohio, as they are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant's products

with Plaintiffs', or as to the origin, sponsorship or approval of Defendant's products, services or commercial activities.

97.     Defendant has willfully engaged in acts of trademark infringement and unfair competition.

98.     Defendant's acts of trademark infringement and unfair competition have caused, and if not restrained by this Court, will continue to cause Plaintiffs serious and irreparable injury for which Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Defendant as follows:

A.      For an injunction restraining Defendant, its members, officers, agents, licensees, servants, employees, attorneys and all other persons in active concert or participation with it from:

> (1)     manufacturing, importing, selling, or distributing the Infringing Products, or any other product bearing Plaintiffs' registered trademarks, unregistered trademarks, or trade dress, or any designation confusingly similar thereto;

> (2)     advertising, displaying, or promoting any product or service by using Plaintiffs' registered trademarks, unregistered trademarks, or trade dress, or any designation confusingly similar thereto; or

> (3)     holding out in any manner whatsoever, that Defendant, or its products or services, are in any way sponsored by, or associated or affiliated with Plaintiffs, or their products or services.

B.     That Defendant be required to promptly file with the Court and serve upon Plaintiffs a report, in writing and under oath, setting forth in detail the manner in which Defendant has complied with any injunction issued by the Court, pursuant to 15 U.S.C. § 1116(a).

C.     That Defendant be directed to deliver up to Plaintiffs for destruction the products and all other materials of any nature whatsoever bearing Plaintiffs' registered trademarks, unregistered trademarks, or trade dress, or any designation confusingly similar thereto, including products, packaging materials, advertising or promotional materials, pursuant to 15 U.S.C. § 1118.

D.     That Defendant be required to make a detailed accounting to Plaintiffs with respect to all transactions relating to its importation, distribution and sales of products bearing Plaintiffs' registered trademarks, unregistered trademarks, or trade dress, or any designation confusingly similar thereto, including:  (1) its gross revenues relating to such products; and (2) its total profits generated, including a detailed explanation of any alleged deductions to be made in the calculation of profits.

E.     That Defendant be directed to pay over to Plaintiffs all gains, profits and advantages realized by Defendant from the sales of products bearing Plaintiffs' registered trademarks, unregistered trademarks, or trade dress, or any designation confusingly similar thereto, pursuant to 15 U.S.C. § 1117.

F.     That Defendant be directed to pay to Plaintiffs all damages suffered by Plaintiffs, and that such damages be trebled pursuant to 15 U.S.C. § 1117.

G.      That Plaintiffs have such other and further relief that the Court may deem just and proper.

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted by:

/s/ Keith Shumate
_____

Dated: Columbus, Ohio
       February 12, 2013

Keith Shumate  (0056190)
Heather Stutz  (0078111)
Squire Sanders (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
614.365.2700
keith.shumate@squiresanders.com
heather.stutz@squiresanders.com

Kevin C. Parks
Michelle L. Zimmermann
(Pending admission *pro hac vice*)
Leydig, Voit & Mayer, Ltd.
180 North Stetson
Two Prudential Plaza, Suite 4900
Chicago, Illinois
312.616.5669
kparks@leydig.com
mzimmermann@leydig.com

*Attorneys for Plaintiffs*
BATH & BODY WORKS BRAND
MANAGEMENT, INC.
and
VICTORIA'S SECRET STORES BRAND
MANAGEMENT, INC.